UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| APOLINAR AMARO HERNANDEZ and VALENTIN GONZALEZ SANTOS, individually and on behalf of all other persons similarly situated who were employed by LANSKY'S EQUITIES CORPORATION d/b/a LANSKY'S OLD WORLD DELI and/or 185 COLUMBUS EQUITY CORP. d/b/a JALAPEÑO and/or SUSHI A GO GO, INC and/or DAVID RUGGIERO and/or THERESA GARELLI, | **Docket No.:** 10-CV-9495 (WHP) |

Plaintiffs,

- against -

LANSKY'S EQUITIES CORPORATION d/b/a LANSKY'S OLD WORLD DELI, and/or 185 COLUMBUS EQUITY CORP. d/b/a JALAPEÑO and SUSHI A GO GO, INC and/or any other entities affiliated with, controlling, or controlled by LANSKY'S EQUITIES CORPORATION and/or 185 COLUMBUS EQUITY CORP. and/or SUSHI A GO GO, INC. and DAVID RUGGERIO and THERESA GARELLI,

Defendants.

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THE MOTION FOR CONDITIONAL CERTIFICATION PURSUANT TO FLSA §216(b) AND TO PUBLISH A NOTICE TO THE CLASS**

### PRELIMINARY STATEMENT

Virginia & Ambinder, LLP represents Apolinar Amaro Hernandez and Valentin Gonzalez Santos ("Named Plaintiffs") and opt-in Plaintiffs Juan Estrada Vega, Wilber Ramirez, Maycon Martinez Cruz, Enedino Codallos Escobar and Benito Delgado Reyes ("Opt-in Plaintiffs") (collectively "Plaintiffs") in the above referenced wage and hour class action litigation. The Plaintiffs submit this application for an order permitting court supervised notification to putative class members pursuant to 29 U.S.C. § 216(b).

This action was brought to recover unpaid minimum wages, overtime compensation, and

spread of hours compensation owed to Plaintiffs who are presently or were formerly employed by Lansky's Equities Corporation d/b/a Lansky's Old World Deli ("Lansky's") and/or 185 Columbus Equity Corp. d/b/a Jalapeño ("Jalapeño") and/or Sushi a Go Go, Inc. ("Sushi a Go Go") and/or David Ruggerio and/or Theresa Garelli, and/or any other entities affiliated with or controlled by Lansky's Equities Corporation d/b/a Lansky's Old World Deli and/or 185 Columbus Equity Corp. d/b/a Jalapeño and/or Sushi a Go Go, Inc and/or David Ruggerio and/or Theresa Garelli (collectively the "Defendants").

## FACTUAL BACKGROUND

The Defendants employed Plaintiffs at one or more of the three named restaurants, all situated on New York City's Upper West Side, to perform work as servers, busboys, runners, dishwashers, cooks, food preparers, delivery guys, and in other restaurant-related tasks. Beginning in approximately 2004, and continuing through the present, Defendants have engaged in a policy and practice of failing to pay their employees minimum wages, overtime compensation, and spread of hours compensation.

Plaintiffs Escobar, Ramirez, Cruz, and Hernandez worked for Defendant Sushi a Go Go at the 1900 Broadway, New York, New York location. [See Affidavit of Enedino Codallos Escobar ("Escobar Aff.") annexed to the Declaration of Leonor H. Coyle as Exhibit C, at ¶ 2; Affidavit of Wilber Ramirez ("Ramirez Aff.") annexed to the Declaration of Leonor H. Coyle as Exhibit D, at ¶ 2; Affidavit of Maycon Martinez Cruz ("Cruz Aff.") annexed to the Declaration of Leonor H. Coyle as Exhibit E, at ¶ 2; and Affidavit of Apolinar Amaro Hernandez ("Hernandez Aff.") annexed to the Declaration of Leonor H. Coyle as Exhibit F, at ¶ 2.]   In addition to working at Sushi a Go Go, Plaintiff Cruz worked at Defendant Jalapeño, located just a few blocks from Sushi a Go Go, at 185 Columbus Ave, New York, New York.

[See Cruz Aff. at ¶ 2.]  Plaintiff Hernandez worked at Sushi a Go Go and at Defendant Lansky's as well, also located just a few blocks from both Sushi a Go Go and Jalapeño, at 235 Columbus Ave, New York, New York.

Plaintiff Hernandez testified that he worked at both at Lansky's and at Sushi a Go Go during the year 2009, sometimes working at both places in a single day.  [See Hernandez Aff. at ¶ 2.]  Plaintiffs Valentin Gonzalez and Mario Espinoza also worked for Defendants at Lansky's. [See Affidavit of Valentin Gonzalez ("Gonzalez Aff.") annexed to the Declaration of Leonor H. Coyle as Exhibit G, at ¶ 2; Affidavit of Mario Espinoza ("Espinoza Aff.") annexed to the Declaration of Leonor H. Coyle as Exhibit H, at ¶ 2.]

The workers who submitted affidavits worked as busboys and cooks.  [Escobar Aff. at ¶ 3; Ramirez Aff. at ¶ 3; Cruz Aff. at ¶ 3; Hernandez Aff. at ¶ 3; Gonzalez Aff. at ¶ 3; and Espinoza Aff. at ¶ 3.]  Collectively, they have worked at Lansky's, Sushi a Go Go, and Jalapeño for four (4) years, from 2005 to 2010. [Escobar Aff. at ¶ 2; Ramirez Aff. at ¶ 2; Cruz Aff. at ¶ 2; Hernandez Aff. at ¶ 2; Gonzalez Aff. at ¶ 2; Espinoza Aff. at ¶ 2.]

While employed by Defendants, Plaintiffs regularly worked more than forty hours each week.  Plaintiff Escobar was paid approximately $25 *per shift* (approximately 8 to 9 hours in duration) plus tips when he worked as a busboy.  [Escobar Aff. at ¶¶ 3-4.]  Plaintiff Escobar normally worked up to 84 hours per week comprising of 5 to 7 days work, from approximately 10:30 a.m. to 12 a.m. or 1 a.m., four days per week; and from 4:00 p.m. to 1:00 a.m. twice or three times a week.  [Escobar Aff. at ¶ 5.]  Plaintiff Ramirez was paid approximately $25 *per shift* plus tips when he worked as a busboy.  [Ramirez Aff. at ¶¶ 3-4.]  Plaintiff Ramirez normally worked five to six days a week, typically three double shifts (each about 14 hours in duration) and two to three single shifts.  [Ramirez Aff. at ¶ 5.]    Plaintiff Cruz worked as a

3

cook up to 70 hours per week and was paid approximately between $320 and $460 per week. [Cruz Aff. at ¶ 3-4.]  Plaintiff Cruz normally worked six to seven days per week, and each week he would work one of three schedules: 1) from 10 a.m. to 8 p.m.; 2) from 12:00 p.m. to 10:00 p.m.; or 3) from 3:00 p.m. to 12:00 a.m. [Cruz Aff. at ¶ 5.]   Plaintiff Hernandez was paid approximately $25 *per shift* plus tips or $60 plus tips per double shift when he worked as a busboy.  [Hernandez Aff. at ¶¶ 3-4.] Plaintiff Hernandez normally worked five days a week from either 10 a.m. to 12 a.m. or from 7:30 a.m. to 4 p.m., 5 p.m. or 6 p.m.  [Hernandez Aff. at ¶ 5.]  Plaintiff Gonzalez was paid approximately $25 *per shift* plus tips when he worked as a busboy.  [Gonzalez Aff. at ¶¶ 3-4.]  Plaintiff Gonzalez normally worked 6 days per week, his work week consisting of two consecutive 8 hour shifts on Saturdays and Sundays, and a single 9 hour shift four days a week.  [Gonzalez Aff. at ¶ 5.]  Plaintiff Espinoza was paid approximately $25 *per shift* plus tips when he worked as a busboy.  [Espinoza Aff. at ¶¶ 3-4.]  Plaintiff Espinoza normally worked six days per week.  On Saturdays and Sundays Plaintiff Espinoza worked from 8:30 a.m. to 1 a.m. and between Monday and Friday he worked four days from 10:30 a.m. to 5 or 6 p.m.  [Espinoza Aff. at ¶ 5.]

Plaintiffs testified that they did not receive the minimum wage for all the hours that they worked, nor did they receive overtime compensation, at time and one half their regular hourly wage, for all the hours over 40 that they worked in any given week.  Moreover, they were not paid spread of hours compensation when they worked more than ten hours in one day.  [Escobar Aff. at ¶¶ 7-8; Ramirez Aff. at ¶¶ 7-8; Cruz Aff. at ¶¶ 7-8; Hernandez Aff. at ¶¶ 7-8; Gonzalez Aff. at ¶¶ 7-8; Espinoza Aff. at ¶¶ 7-8.]

All Plaintiffs were paid in cash, except for Plaintiff Espinoza who was paid both by payroll check and cash.  [Escobar Aff. at ¶ 6; Ramirez Aff. at ¶ 6; Cruz Aff. at ¶ 6; Hernandez

4

Aff. at ¶ 6; Gonzalez Aff. at ¶ 6; Espinoza Aff. at ¶ 6.]   Plaintiff Espinoza further testified that his payroll check, as well as those of his co-workers, did not accurately reflect all the hours that they worked in any given week.  [Espinoza Aff. at ¶ 6.]   In fact, Plaintiffs testified that, managers would tell employees to clock in two hours after the beginning of their respective shifts thereby reducing the number of recorded work hours.  [Gonzalez Aff. at ¶ 9; Hernandez Aff. at ¶ 9.]

Certain Plaintiffs worked at more than one of Defendants' restaurant locations, and testified that they were treated and compensated in like manner regardless of the Defendants' work location.  [Cruz Aff. at ¶ 4; Hernandez Aff. at ¶ 4.]

Upon information and belief, Defendants David Ruggerio and Theresa Garelli are shareholders, corporate officers, presidents, vice presidents, directors, and/or owners of Defendants Lansky's, Sushi a Go Go, and Jalapeño.  David Ruggerio and Theresa Garelli made major personnel decisions for Lansky's, Sushi a Go Go and Jalapeño, such as: (i) the hiring and firing of employees; (ii) supervising and controlling employee work schedules or conditions of employment; (iii) determining the rate and method of payment (primarily cash) to pay workers at all locations; and (iv) maintaining employment, payroll and tax reporting records.  In sum, David Ruggerio and Theresa Garelli controlled all of the alleged activities of Lansky's, Sushi a Go Go, and Jalapeño that give rise to the claims brought in this action.

On December 21, 2010, Plaintiffs filed a complaint against Defendants alleging violations of the Fair Labor Standards Act (hereinafter referred to as "FLSA"), 29 U.S.C. §§ 206, 207, and 216(b); New York Labor Law Article 19 §§ 633 and 650 *et sec*;  New York Labor Law Article 6 § 190 *et sec*.; and N.Y. CODES RULES AND REGULATIONS TITLE 12 §§ 137-1.2 and 137-1.3 to recover unpaid minimum wages, overtime compensation, and spread of

hours compensation owed to Plaintiffs and all similarly situated persons who are presently or were formerly employed by Defendants.  .

Plaintiffs seek an order pursuant to 29 U.S.C. § 216(b) granting conditional certification, and authorizing Plaintiffs to send notice to all prospective members of the class of Lansky's, Sushi a Go Go's, and Jalapeño's employees.  Specifically, Plaintiffs seek conditional certification of the following defined collective class:

> The Plaintiffs and all current and former employees of Lansky's Equities Corporation d/b/a Lansky's Old World Deli and/or 185 Columbus Equity Corp. d/b/a Jalapeño and/or Sushi A Go Go, Inc and/or David Ruggerio and/or Theresa Garelli, and/or any other entities affiliated with or controlled by Lansky's equities Corporation d/b/a Lansky's Old World Deli and/or 185 Columbus Equity Corp. d/b/a Jalapeño and/or Sushi A Go Go, Inc and/or David Ruggerio and/or Theresa Garelli, who performed work as servers, busboys, runners, dishwashers, cooks, food preparers, hosts, hostesses, runners, barbacks, bartenders, delivery personnel and other restaurant-related tasks at Defendant restaurants located in New York, New York from 2007 through the present. Corporate officers, shareholders, directors, administrative employees, and other customarily exempt employees are not part of the defined class.

## ARGUMENT

As stated above, Plaintiffs seek an order pursuant to 29 U.S.C. § 216(b) authorizing Plaintiffs to send a Notice of Pendency of Collective Action and Consent to Joinder ("opt-in") form to all prospective members of the class who did not receive minimum wages, overtime compensation, and/or spread of hours compensation allegedly owed to them by Defendants. (Plaintiffs' proposed Notice of Pendency ("Notice"), Consent to Joinder Form ("Opt-in Form") and proposed Publication Order are annexed to the Declaration of Leonor H. Coyle as Exhibits A and B). The FLSA, 29 U.S.C. § 216(b) provides in pertinent part that:

[a]n action…may be maintained against any employer (including

> a public agency) in any Federal or State court of competent
> jurisdiction by any one or more employees for and in behalf of
> himself or themselves and other employees similarly situated. No
> employee shall be a party plaintiff to any such action unless he
> gives his consent in writing to become such a party and such
> consent is filed in the court in which such action is brought.

This provision of the FLSA has been interpreted to establish an "opt-in" scheme in which plaintiffs must affirmatively notify the court of their intentions to be a party to the suit. *D'Anna v. M/A-COM, Inc.*, 903 F.Supp. 889 (D. Md. 1995). The purpose of this provision allows for an early and orderly prosecution of this action by advising all potential class members of the pendency of this action, and the basic nature of the class claims. Furthermore, it insures against inconsistent results through competing lawsuits by other aggrieved workers who may be contemplating legal action. This reasoning has repeatedly been applied in FLSA collective actions similar to the instant action. In *Patton v. Thomson*, 364 F.Supp.2d 263 (E.D.N.Y. 2005), Magistrate Judge Orenstein directed Plaintiffs to publish a notice of pendency early in the litigation reasoning that:

> …it is appropriate to do so at this stage, rather than awaiting the
> completion of discovery…. [D]oing so now is "a means of
> facilitating the Act's broad remedial purpose and promoting
> efficient case management" *Hoffmann* [*v. Sbarro*, 982 F.Supp.
> 249, 262 (S.D.N.Y. 1997)] (citing *Braunstein* [*v. Eastern
> Photographic Lab.*, 600 F.2d 335, 336 (2d Cir. 1978)]. In
> particular, early notice will help to preserve and effectuate the
> rights of potential plaintiffs whose claims might otherwise
> become time-barred during the discovery phase of the case.

*Id*. at 268. Additionally, there is no prejudice to the Defendants as the proposed Notice and Opt-in Form annexed herewith as Exhibit A do not provide anything more than a court-approved general description of the action, a history of the proceedings, and an explanation of opt-in procedures. *Id*.

It has been held that district courts have the discretion to facilitate notice to potential members of the class under the FLSA. *Hoffmann-LaRoche, Inc. v. Sperling*, 493 U.S. 165, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989); *Braunstein*, 600 F.2d at 336. In so holding, the Second Circuit declared that giving courts the power to facilitate notice "comports with the broad remedial purpose of the Act, which should be given a liberal construction, as well as with the interest of the courts in avoiding multiplicity of suits." *Braunstein v. Eastern Photographic Lab.*, 600 F.2d 335, 336 (2d Cir. 1978).

Court supervised notice to potential class members generally occurs during the first stage of a two-part procedure where courts determine whether the potential plaintiffs in a class action are "similarly situated" in accordance with 29 U.S.C. § 216(b). *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363 (S.D.N.Y. 2007). The first stage, also referred to as the notice stage, takes place prior to discovery, requiring the court to make its determination on whether to certify the class based on the limited evidence then available. *Pendlebury v. Starbucks Coffee Company*, 2005 WL 84500 at *3 (S.D. Fla. Jan. 3, 2005); *Epps v. Oak Street Mortgage LLC*, 2006 WL 1460273 at *3 (M.D. Fla. May 22, 2006). The Court in *Iglesias-Mendoza* explained:

> At the first stage, the court will look at the pleadings and affidavits. If the plaintiff satisfies "the minimal burden of showing that the similarly situated requirement is met," the court certifies the class as a collective action. *Scholtisek v. Eldre Corp.*, 229 F.R.D. 381, 387 (W.D.N.Y. 2005). At this juncture – also termed the "notice stage" – the court applies "a fairly lenient standard" and (when it does so) typically grants "conditional certification." *Torres v. Gristede's Operating Corp.*, 2006 WL 2819730, *7 (S.D.N.Y. Sept. 28, 2006) (quoting *Moss v. Crawford & Co.*, 201 F.R.D. 398, 409 (W.D.Pa. 2000)). Potential class members are then notified and provided with an opportunity to opt in to the action. *Scholtisek*, 229 F.R.D. at 387.

*Id.* at 367.

Because the first stage is made on a "fairly lenient standard," as the available evidence at that time is extremely confined and restricted, courts have held that, at this preliminary stage, "plaintiffs can satisfy the 'similarly situated' requirement by making 'a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law.'" *Iglesias-Mendoza*, 239 F.R.D. at 367-68 (citing *Realite v. Ark Restaurants Corp.*, 7 F.Supp.2d 303, 306 (S.D.N.Y. 1998)). This is a more liberal standard than the required showing under Fed. R. Civ. Pro. 23 because "no showing of numerosity, typicality, commonality and representativeness need be made." *Iglesias-Mendoza*, 239 F.R.D. at 368 (citing *Young v. Cooper Cameron Corp.*, 229 F.R.D. 50, 54 (S.D.N.Y. 2005)).

Although courts need not conclusively determine whether a class of "similarly situated" plaintiffs exists at the notice stage, "there must be, at a minimum, evidence of such a potential class sufficiently developed at this time to allow court-facilitated class notice." *D'Anna*, 903 F.Supp. at 893. In making this determination, "courts appear to require nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy or plan infected by discrimination." *Id.* *See also Severtson v. Phillips Beverage Co.*, 137 F.R.D. 264, 267 (D. Minn. 1991) (plaintiffs required to establish "at least a colorable basis for claim that similarly situated plaintiffs exists"); *Guzman v. VLM, Inc.*, 2007 WL 2994278, at *3 (E.D.N.Y. Oct. 11, 2007) (Gleeson, J.); *Gjurovich v. Emmanuel's Marketplace, Inc.,* 282 F.Supp.2d 91, 95-97 (S.D.N.Y.2003).

The Plaintiffs in the instant matter have clearly met this minimal standard. Plaintiffs have specifically alleged that during the course of their employment, the Defendants employed them and other similarly situated members of the putative class to perform work as servers, busboys, dishwashers, cooks, delivery personnel, and other restaurant-related tasks, at one or

more of the three restaurants owned by Defendants.  [14; Escobar Aff. at ¶¶ 2-3, 14; Ramirez Aff. at ¶¶ 2-3, 14; Cruz Aff. at ¶¶ 2-3, 14; Hernandez Aff. at ¶¶ 2-3, 14; Gonzalez Aff. at ¶¶ 2-3, 14; Espinoza Aff. at ¶¶ 2-3, 14.]

Plaintiffs allege that they were not paid their regular hourly wage for all hours worked. [Escobar Aff. at ¶¶ 7-9; Ramirez Aff. at ¶¶ 7-9; Cruz Aff. at ¶¶ 7-9; Hernandez Aff. at ¶¶ 7-9; Gonzalez Aff. at ¶¶ 7-9; Espinoza Aff. at ¶¶ 7-9.]    Plaintiffs also testified that they regularly worked more than 40 hours every week, but that they did not receive time and one-half of their regular hourly wage for all the hours over 40 that they worked.  [Escobar Aff. at ¶¶ 7-9; Ramirez Aff. at ¶¶ 7-9; Cruz Aff. at ¶¶ 7-9; Hernandez Aff. at ¶¶ 7-9; Gonzalez Aff. at ¶¶ 7-9; Espinoza Aff. at ¶¶ 7-9.]    Plaintiffs also allege that they often worked more than ten hours in a single day and did not receive spread of hours compensation.  [Escobar Aff. at ¶¶ 7-9; Ramirez Aff. at ¶¶ 7-9; Cruz Aff. at ¶¶ 7-9; Hernandez Aff. at ¶¶ 7-9; Gonzalez Aff. at ¶¶ 7-9; Espinoza Aff. at ¶¶ 7-9.]

Plaintiffs represent that they personally worked with no less than between 30-50 similarly situated employees at Sushi a Go Go, between 60-100 similarly situated employees at Lansky's,  and no less than 25 similarly situated employees at Jalapeño.  [Escobar Aff. at ¶ 11; Ramirez Aff. at ¶ 11; Cruz Aff. at ¶ 11; Hernandez Aff. at ¶ 11; Gonzalez Aff. at ¶ 11; Espinoza Aff. at ¶ 11.]    Plaintiffs testified that other workers, who performed the same or similar duties, were similarly underpaid based on their personal observations and discussions that they had with many of these individuals at all three restaurants.  [Escobar Aff. at ¶¶ 13-14; Ramirez Aff. at ¶¶ 13-14; Cruz Aff. at ¶¶ 13-14; Hernandez Aff. at ¶¶ 13-14; Gonzalez Aff. at ¶¶ 13-14; Espinoza Aff. at ¶¶ 13-14.]    These discussions were held with other workers who were not being paid their lawful wages.  [Hernandez Aff. at ¶¶ 10, 14; Cruz Aff. at ¶¶ 10, 14; Escobar

Aff. at ¶¶ 10, 14; Gonzalez Aff. at ¶¶ 10, 14.]  Plaintiffs Espinoza and Ramirez further testified that they, and other employees of Lansky's and Sushi a Go Go, would often travel between the restaurants to work or to carry supplies and material to each location as needed.  [Ramirez Aff. at ¶ 11; Espinoza Aff. at ¶ 11.]   Plaintiff Ramirez testified that employees from Sushi a Go Go were dispatched to Lansky's to help set up the restaurant before and after it originally opened. [Ramirez Aff. at ¶ 11.]  Moreover, Plaintiffs Ramirez and Espinoza testified that most or all of the employees were aware that David Ruggerio and Theresa Garelli were the owners of all three Defendant restaurants. David Ruggerio was present at Sushi a Go Go throughout the day, until the time when Lansky's opened, at which point he began to spend more time at Lansky's. [Ramirez Aff. at ¶ 11; Espinoza Aff. at ¶ 11.]

Based on the foregoing and the testimony and evidence contained in Plaintiffs respective affidavits, it is clear that Plaintiffs have sufficiently established "a colorable basis" for their claim that Defendants engaged in a policy and practice of failing to pay their employees the minimum wage for all hours worked and overtime compensation for all hours worked over 40 in any given week, as well as spread of hours compensation for the days in which they worked more than ten hours in one day. *See Greene et al. v. C.B. Holding Corp. d/b/a Charlie Brown's Steakhouse et al.*, 10-CV-1094, Aug. 12, 2010 Order by Judge Jack B. Weinstein; *Severtson*, 137 F.R.D. at 267; *Nawrocki et al v. Crimson Const. Corp. et al*, 2009 WL 2356438 (E.D.N.Y. July 30, 2009).  Plaintiffs "have easily made the modest showing that is required of them at this preliminary stage:  they were subjected to certain wage and hour practices at the defendants' workplace and to the best of their knowledge, and on the basis of their observations, their experience was shared by members of the proposed class." *Iglesias-Mendoza*, 239 F.R.D. at 368.

Accordingly, Plaintiffs respectfully request that this Court grant Plaintiffs' motion and authorize that notice be given to potential class members to opt–in to this lawsuit in accordance with 29 U.S.C. § 216(b), along with such further relief as this Court deems necessary.

Dated:  April 11, 2011
     New York, New York

                             VIRGINIA & AMBINDER, LLP

                             _____/s/_____
                             By: Lloyd Ambinder, Esq.
                                Leonor H. Coyle, Esq.
                             Trinity Centre
                             111 Broadway, Suite 1403
                             New York, New York 10006
                             Tel: (212) 943-9080
                             Fax: (212) 943-9082

                             *Attorneys for Plaintiffs and Putative Class*

To:
LITTLER MENDELSON, P.C.
Andrew P. Marks
*Attorneys for Defendants*
900 Third Avenue
New York, NY 10022-3298
Telephone: (212) 583-9600
Fax: (212) 832-2719