UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| APOLINAR AMARO HERNANDEZ and VALENTIN GONZALEZ SANTOS, on behalf of themselves and others similarly situated,<br><br>Plaintiffs,<br><br>-against-<br><br>LANSKY'S EQUITIES CORPORATION, et al,<br><br>Defendants. | 10 CV 9495 (WHP)(HP)<br><br>Electronically Filed |

# MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION

LITTLER MENDELSON
A Professional Corporation
900 Third Avenue
New York, NY 10022.3298
212.583.9600

Attorneys for Defendants

*Of Counsel*
  Andrew P. Marks
  Elena Paraskevas-Thadani

## TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT .................................................................................................. 1

ARGUMENT .................................................................................................................................. 3

POINT I   NOTICE TO PUTATIVE CLASS MEMBERS IS UNWARRANTED ............... 3

    A.  Plaintiffs' Motion to Circulate Notice Should Be Denied Because They Have Not Plausibly Plead a Violation of the FLSA ................................................ 4

    B.  Claims Against Lansky's Are Barred by its Settlement with the Secretary of Labor ................................................................................................................... 8

POINT II   ANY COURT FACILITATED NOTICE TO POTENTIAL CLASS MEMBERS SHOULD BE CLEAR AND ACCURATE AND WRITTEN IN A FASHION THAT WILL NOT STIR UP UNRELATED LITIGATION .................................................................................................................... 9

    A.  Notice Should Be Limited to Employees of Lansky's and Sushi a Go Go ............ 9

    B.  Notice Should Be Limited to Bussers at Lansky's and Sushi a Go Go ................ 10

    C.  Notice Should Identify the Common Policy That Violated the FLSA ................ 11

    D.  Any Court Approved Notice Should be Limited to a Three-Year Period ........... 11

    E.  Discussion of New York Labor Law and Spread of Hours Pay is Unwarranted ......................................................................................................... 12

    F.  Miscellaneous Corrections to Proposed Notice ................................................... 13

CONCLUSION ............................................................................................................................. 14

# TABLE OF AUTHORITIES

PAGE

## CASES

*Ashcroft v. Iqbal,*
  556 U.S. ___, 129 S.Ct. 1937 (2009) ........................................................................... 5

*Barfield v. New York City Health and Hospitals Corp.,*
  2005 U.S. Dist. LEXIS 28884 (S.D.N.Y. Nov. 17, 2005) ......................................... 10

*Brickey v. Dolgencorp., Inc.,*
  2011 U.S. Dist. LEXIS 17769 (W.D.N.Y. Feb. 23, 2011) ......................................... 8

*Castro v. Spice Place, Inc.,*
  2009 U.S. Dist. LEXIS 7678 (S.D.N.Y. 2009) ......................................................... 10

*Dolan v. Project Constr. Corp.,*
  725 F.2d 1263 (10th Cir. 1984) .................................................................................. 4

*Goldin v. Boce Group, L.C.,*
  2011 U.S. Dist. LEXIS 33347 (S.D. Fla. Mar. 28, 2011) ........................................... 6

*Gomez v. H & R Gunlund Ranches, Inc.,*
  2010 U.S. Dist. LEXIS 137736 (E.D. Cal. Dec. 16, 2010) ...................................... 12

*Hoffmann-La Roche Inc. v. Sperling,*
  493 U.S. 165 (1989) ................................................................................................ 3, 9

*In Re Penthouse Exec. Club Compensation Litigation,*
  2010 U.S. Dist. LEXIS 114743 (S.D.N.Y. Oct. 27, 2010) ....................................... 12

*Lin v. Benihana Nat'l Corp.,*
  2010 U.S. Dist. LEXIS 132871 (S.D.N.Y. Nov. 9, 2010) .......................................... 7

*Malena v. Victoria's Secret Direct, LLC,*
  2010 U.S. Dist. LEXIS 121320 (S.D.N.Y. Nov. 16, 2010) ........................................ 9

*McBeth v. Gabrielli Truck Sales, Ltd.,*
  2011 U.S. Dist. LEXIS 10398 (E.D.N.Y. Feb 3, 2011) ...................................... 12, 13

*Montgomery v. Wal-Mart Stores, Inc.,*
  2007 U.S. Dist. LEXIS 70574 (S.D. Miss. Sept. 24, 2007) ...................................... 13

*Myers v. Hertz Corp.,*
  624 F.3d 537 (2nd Cir. 2010) ..................................................................................... 3

*Nakahata v. New York-Presbyterian Healthcare Sys.,*
  2011 U.S. Dist. LEXIS 8585 (S.D.N.Y. Jan. 28, 2011) ............................................. 4

*Sexton v. Franklin First Fin., Ltd.,*
  2009 U.S. Dist. LEXIS 50526 (E.D.N.Y. June 16, 2009) ........................................ 13

*Shajan v. Barolo, Ltd.,*
  2010 U.S. Dist. LEXIS 54581 (S.D.N.Y. June 2, 2010) .......................................... 14

*Wolman v. Catholic Health Sys. of Long Island,*
  2010 U.S. Dist. LEXIS 137392 (E.D.N.Y. Dec. 30, 2010) ........................................ 4

## TABLE OF AUTHORITIES
### (CONTINUED)
**PAGE**

*Zhong v. August August Corp.*,
  498 F. Supp. 2d 625 (S.D.N.Y. 2007)......................................................................... 5, 6

### OTHER AUTHORITIES

29 C.F.R. § 778.112 ........................................................................................................ 5
29 U.S.C. § 203 ........................................................................................................... 6, 7
29 U.S.C. § 203(m) ........................................................................................................ 6
29 U.S.C. § 216(b) ........................................................................................... 1, 3, 8, 10
Fed. R. Civ. P. 12(b)(6) .................................................................................................. 4
New York Labor Law § 193 ........................................................................................... 6

## PRELIMINARY STATEMENT

Defendants Lansky's Equities Corporation ("Lansky's"), 185 Columbus Equity Corp. ("Jalapeño"), Sushi A Go Go Inc. and David Ruggiero submit this memorandum of law in opposition to plaintiffs' motion for conditional certification as a collective action and leave to send notice to putative class members pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b).

Plaintiffs are two former Lansky's bussers (f/k/a bus boys). Plaintiff Apolinar Amaro Hernandez (referred to as "Hernandez" in the complaint and as "Amaro" in his affidavit") was fired for operating a pornographic web site inside the restaurant and soliciting his co-workers to engage in sex acts for broadcast.[1] Plaintiff Valentin Gonzalez Santos quit without notice after working for a brief period of time. During their employment with Lansky's, the United States Department of Labor ("DOL") conducted an audit of Lansky's payroll records covering the period from its opening in October 2008 through July 2009. The DOL sent Spanish speaking investigators to the restaurant on several occasions to interview employees and ultimately determined that some employees were owed additional wages in the total amount of $21,184. Thereafter, Lansky's entered into a settlement agreement with the DOL under which Lansky's made payments to the DOL for all employees the DOL had determined had been underpaid in settlement of their claims under the Fair Labor Standards Act. The DOL should be in the process of distributing that money to the employees and obtaining releases. The DOL also suggested to Lansky's that it should pay hourly rather than by the shift. Lansky's has complied with that instruction. (Young Aff. ¶ 5)

---

[1] See Affirmation of David Ruggerio, Exhibit A; Glen Young ("Young Aff."); Affirmation of Glen Young ("Young Aff.") at paragraph 8.

Neither Hernandez nor Santos was identified by the DOL as being owed any wages under the FLSA. In fact, based on plaintiffs' allegations as to their hours worked and wages paid, both plaintiffs received more than the minimum wage and overtime required by federal law.[2] The complaint asserts that plaintiffs, in addition to tips, were paid between $25 and $35, for a single shift of 8 to 9 hours, and $60 plus tips for a double shift of approximately 14 hours. (Complaint ¶¶ 30-32) Thus plaintiffs' hourly wage was at least $2.77 (*i.e.*, $25 ÷ 9 hours). At all times relevant hereto, the federal minimum wage for tipped employees was $2.13 per hour. Accordingly, plaintiffs by their own admission, were paid no less than minimum wage. Plaintiffs also received sufficient wages to cover any overtime obligation. Plaintiffs assert that Gonzalez worked "an average of about 60 hours each week" comprised of four single shifts at $25, and two double shifts at $60. The federal overtime rate for tipped employees is $6.11 per hour. Therefore, Gonzalez would have been owed, according to his calculations, (40 hours x $2.13) + (20 hours x $6.11) = $207.40 per week. Gonzalez was paid no less than $220 per week (4 shifts x $25) + (2 shifts x $60). Therefore, the complaint fails to state a plausible claim that Lansky's violated the FLSA overtime requirements.[3]

Because the complaint fails to state a claim for violation of the Fair Labor Standards Act, and because the claims of other employees at Lansky's have been resolved by the DOL, plaintiffs' motion to permit supervised notification to putative class members should be denied and the complaint should be dismissed for lack of federal jurisdiction.

---

[2] Plaintiffs' complaint also asserts minimum wage and overtime claims under New York State Labor law. Defendants deny any violation of state law. But the legitimacy of those claims is not at issue for purposes of this motion which seeks to litigate their federal claims as a collective action.

[3] The complaint does not allege how many, if any, hours Hernandez worked overtime.

## ARGUMENT

### POINT I

### NOTICE TO PUTATIVE CLASS MEMBERS IS UNWARRANTED

Plaintiffs move for "conditional certification pursuant to FLSA § 216(b) and to publish a notice to the class." (Pl. Mem. 1) Conditional certification should be denied as there is no provision for such relief. As the Second Circuit explained in *Myers v. Hertz Corp.*, 624 F.3d 537, 555 n.10 (2nd Cir. 2010), "while courts speak of 'certifying' a FLSA collective action ... the 'certification' we refer to here is only the district court's exercise of the discretionary power, upheld in *Hoffmann-La Roch*, to facilitate the sending of notice to potential class members. Section 216(b) does not by its terms require any such device ...." Since there is no device to *certify* an FLSA class, conditional certification should be denied.

Plaintiffs' request for judicially authorized notice should be denied as well. Authorization of notice to prospective FLSA opt-in plaintiffs is discretionary, not mandatory. *Hoffmann-La Roche,* at 169. The Court of Appeals in *Myers* acknowledged that there is no controlling precedent as to when the court should involve itself in facilitating notice:

> In determining whether to exercise this discretion in an "appropriate case[ ]," the district courts of this Circuit appear to have coalesced around a two-step method, a method which, while again not required by the terms of FLSA or the Supreme Court's cases, we think is sensible. The first step involves the court making an initial determination to send notice to potential opt-in plaintiffs who may be "similarly situated" to the named plaintiffs with respect to whether a FLSA violation has occurred. . . . The court may send this notice after plaintiffs make a "modest factual showing" that they and potential opt-in plaintiffs "together were victims of a common policy or plan that violated the law." . . . The "modest factual showing" cannot be satisfied simply by "unsupported assertions" . . . .

624 F.3d at 554-55 (internal citations omitted). Significantly, nothing in *Meyers* suggests a preference for granting notice. Nor can the case be read as tolerating, what might have been a

growing trend, of approving notice based on a boilerplate complaint that plaintiffs were not paid all wages owed accompanied by conclusory and duplicative affidavits substantially lacking in personal knowledge.[4]   The showing of a common policy or plan that violated the Fair Labor Standards Act, however modest, still must be made and supported by facts.

### A. Plaintiffs' Motion to Circulate Notice Should Be Denied Because They Have Not Plausibly Plead a Violation of the FLSA

"[A] properly pled FLSA overtime claim must at least approximately, allege the hours worked, for which wages were not received." *Wolman v. Catholic Health Sys. of Long Island*, 2010 U.S. Dist. LEXIS 137392 (E.D.N.Y. Dec. 30, 2010) (internal quotations omitted); *see also Nakahata v. New York-Presbyterian Healthcare Sys.*, 2011 U.S. Dist. LEXIS 8585, *20-21 (S.D.N.Y. Jan. 28, 2011) ("Both the FLSA and the NYLL require that a complaint state more than vague legal conclusions to survive a Fed. R. Civ. P. 12(b)(6) motion. At a minimum, it

---

[4] In the face of the tsunami of FLSA claims, it may be worthwhile to remember that the FLSA's legislative history does not unambiguously support applying a lenient "conditional certification" standard. As the Tenth Circuit explained in *Dolan v. Project Constr. Corp.*, 725 F.2d 1263, 1267 (10th Cir. 1984), Congress added the opt-in provision to the FLSA in part to curtail "excessive and needless litigation," and the discovery burdens a representative action under the FLSA places on employers. In describing the financial burdens affecting interstate commerce, the House of Representatives' Report stated:

> The procedure in these suits follows a general pattern. A petition is filed under section [2]16(b) [providing for representative actions] by one or two employees in behalf of many others. To this is attached interrogatories calling upon the employer to furnish specific information regarding each employee during the entire period of employment. The furnishing of this data alone is a tremendous financial burden to the employer." H.R. Rep. No. 71, 80th Cong., 1st Session 4 (1947); 1947 U.S. CODE CONG. & AD. NEWS, (80th Cong., 1st Session) 1032. Not only did Congress disapprove of the normal discovery practices associated with class actions but it also made the specific finding that unless the provisions of the FLSA of 1938 were changed "the courts of the country would be burdened with excessive and needless litigation and champertous practices would be encouraged." § 1(a)(7) Portal-to-Portal Act of 1947.

must set forth the approximate number of unpaid regular and overtime hours allegedly worked."); *Zhong v. August August Corp.*, 498 F. Supp. 2d 625, 630 (S.D.N.Y. 2007) ("mere[] alleg[ation]" that plaintiff sometimes "worked 'beyond 40 hours per week'" did not state FLSA claim). The complaint here does not meet even this minimal burden. The facts alleged here are that plaintiffs were "paid between $25 to $35, plus tips, for single shifts (approximately 8-9 hours)." (Complaint ¶¶ 30-32) Paying an employee a fixed fee per day or per job is a perfectly permissible policy or plan under the FLSA regulations, 29 C.F.R. § 778.112. Because a shift pay policy does not violate the law, a collective action based on such a policy alone cannot be sustained.

The complaint does allege: "Upon information and belief, Defendants failed to pay the Named Plaintiffs and other members of the putative class all earned overtime wages, at the rate of one and one half times (1.5X) the regular rate of pay, for the time in which they worked after the first forty (40) hours in any given week." (Compl. ¶ 54) But this "formulaic recitation of the elements of a cause of action" is not sufficient to state a claim. *Ashcroft v. Iqbal*, 556 U.S. ___, 129 S.Ct. 1937, 1949 (2009). While Federal Rule of Civil Procedure 8(a)(2) does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S.Ct. at 1949. These pleading defects are not cured by cookie cutter affidavits which merely echo the conclusory statement that: "I always worked more than 40 hours in a week. I was not paid my regular hourly wage for all the hours over 40 that I worked each week. I was also not paid time and one-half my regular wage for all the hours over 40 that I worked each week." Hernandez Aff. ¶ 7; Gonzalez Aff. ¶ 7.[5]

---

[5] The affidavits of Enedino Codallos Escobar and Wiber Ramirez, other bussers who received shift pay plus tips, contain the identical conclusory assertions and, therefore, suffer the same fatal

Naked conclusions that employees weren't paid for all hours or weren't paid overtime are insufficient to state a claim. *Zhong*, 498 F. Supp. 2d at 630. Rather, Plaintiffs must plead facts to render that claim plausible. And here the "facts" pled render the claim implausible. As discussed above, Plaintiffs were paid at least $2.77 per hour when the FLSA rate for tipped employees was only $2.13 per hour, and received sufficient wages to surpass the FLSA overtime rate for all hours allegedly worked in excess of 40.

The complaint asserts that defendants cannot take a tip credit because "they engaged in a regular pattern and practice of unlawfully paying their tipped employees less than the minimum wage for tipped employees in violation of 29 U.S.C. § 203 ...." (Complaint ¶ 28) This circular argument is erroneous because the asserted facts establish that plaintiffs were paid more than the $2.13 per hour tipped rate required under the FLSA.[6] In any event, the FLSA contains only two requirements for the tip credit: (1) that the employees are informed that they are being paid the tipped rate; and (2) all tips received by the employee must be retained by the employee. 29 U.S.C. § 203(m). Paying employees $2.12 or less per hour and/or not paying for every hour worked does not vitiate the tip credit. *See, Goldin v. Boce Group, L.C.*, 2011 U.S. Dist. LEXIS 33347, *7 (S.D. Fla. Mar. 28, 2011) ("Congress did not choose to include as a remedy [for FLSA violations] disgorgement of the tip credit where the plaintiff is a tipped employee.")

---

defect. *See*, Escobar Aff. ¶ 7; Ramirez Aff. ¶ 7. Mario Espinoza does aver that he "typically" worked 72 hours each week; but he also avers that he normally worked six days a week in shifts of either 16.5 hours or 6.5 hours. No combination of these shifts adds to 72 hours per week. Espinoza Aff. ¶¶ 5, 7.

[6] Here again, plaintiffs' attempt to cover the deficiencies of their FLSA claim by referring to violations of New York Labor Law § 193. (Complaint ¶ 28). Compliance with Labor Law § 193, which deals with deductions from agreed upon wages, not the minimum wage for tipped employees, has no impact whatsoever on compliance with the FLSA.

The complaint also alleges that Defendants "failed to provide notice to their employees of the provisions of 29 U.S.C. § 203 ...." (Complaint ¶ 29)  Yet not one of the affiants supports this claim, though they acknowledge receiving tips.  In establishing that collective action certification is warranted, "plaintiffs can rely on the pleadings, but only as supplemented by other evidence, such as affidavits." *Lin v. Benihana Nat'l Corp.*, 2010 U.S. Dist. LEXIS 132871, at *8 (S.D.N.Y. Nov. 9, 2010).  The plaintiffs' supporting allegations "must be specific, not conclusory." *Id.* at *9.  Plaintiffs' accompanying affidavits do not even mention notice of tip credit, let alone provide any support for such allegation.  This is not surprising because notifying employees of the tip credit would be a cost-free, cost-savings measure that the employer would be incentivized to take.  And as evidenced by the affidavits submitted by Defendants in opposition to plaintiffs' motion, Defendants did in fact take advantage of this measure, and employees were advised that they would be paid at the tip rate.[7]

We anticipate plaintiffs may try to cure this defect in reply affidavits claiming that they do not recall being notified of the tip credit.  Assuming such post-motion hole plugging were credible in the face of numerous pay periods where plaintiffs received the reduced rate plus tips, it would not evidence a policy of the defendants of refusing (or failing) to notify employees of the tip credit.  At best, such conflicting affidavits would create a disputed fact requiring individualized assessment – thereby rendering this case unsuitable for resolution by a collective action. *See, e.g., Brickey v. Dolgencorp., Inc.*, 2011 U.S. Dist. LEXIS 17769 (W.D.N.Y. Feb.

---

[7]  Defendants offer the declarations of three servers employed at Lansky's: Kimberly Dipersia, Zoran Popovic, and Hamene Aouji.  Mr. Popovic, who was hired by Lansky's General Manager Glenn Young in December 2008, states: "When I began working for Lansky's, Glenn Young explained to me that ... the hourly wage I was paid was the minimum wage for tipped employees and ... the restaurant was counting some of my tips as wages for the purpose of reaching the required minimum wage." Popovic Dec. ¶ 4. *See also*, Young Aff. ¶ 4; Aouji Dec. ¶ 4; Dipersia Dec. ¶ 4.

23, 2011) (Rule 216(b) collective action not appropriate based on allegations that managers failed to comply with facially-lawful policy absent evidence that they were encouraged, compelled or forced to do so).

Because Plaintiffs have failed to plead a plausible claim that Defendants violated the Fair Labor Standards Act, their request to circulate a notice of their FLSA claims should be denied.

**B.    Claims Against Lansky's Are Barred by its Settlement with the Secretary of Labor**

In 2010, the United States Department of Labor investigated Lansky's business under the Fair Labor Standards Act covering the period of October 20, 2008 (the opening date) through July 19, 2009. Following the conclusion of that investigation, Lansky's entered into a settlement with the Secretary of Labor pursuant to which Lansky's agreed to pay 31 employees back wages. (A copy of the settlement is annexed as Exhibit A to the Ruggerio Affirmation). The FLSA authorizes the Secretary of Labor "to supervise the payment of the unpaid minimum wages or the unpaid overtime compensation owing to any employee or employees under section 206 or section 207 of this title, and the agreement of any employee to accept such payment shall upon payment in full constitute a waiver by such employee of any right he may have under [section 216(b)] ...." 29 U.S.C. § 216(b). To the extent that any of the potential plaintiffs have accepted payment from the DOL settlement, they should not be permitted to pursue their claims here. Furthermore, because all employees of Lansky's had the opportunity to participate in the DOL investigation, they were well aware of their rights under the FLSA and circulation of a notice to those same individuals is unwarranted. And, not only have the employees been given notice of their rights through the DOL investigation, presumably all those employees who were underpaid have been identified by the DOL and have already received remuneration through settlement with the DOL.

In sum, plaintiffs' request for judicially authorized notice should be denied. Notice is discretionary, not mandatory. *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169 (1989). Where, as here, (i) the complaint fails to state a violation of the FLSA; and (ii) employees have had the opportunity to recover any wages due through the U.S. Department of Labor, this Court should exercise its discretion and deny the request.

## POINT II

### ANY COURT FACILITATED NOTICE TO POTENTIAL CLASS MEMBERS SHOULD BE CLEAR AND ACCURATE AND WRITTEN IN A FASHION THAT WILL NOT STIR UP UNRELATED LITIGATION

If the Court determines that judicial notice is warranted under the circumstances, "the content of the notice" to be provided "is left to the court's discretion." *Malena v. Victoria's Secret Direct, LLC*, 2010 U.S. Dist. LEXIS 121320, at *10 (S.D.N.Y. Nov. 16, 2010). The Court should manage that communication here to assure that it is fair and accurate and is not used to stir up litigation unnecessarily. Plaintiffs' notice should be limited to potential opt-in plaintiffs who were victims of the same policy or plan that allegedly violated the FLSA, *i.e.*, the payment of a tipped rate without notification.

### A.    Notice Should Be Limited to Employees of Lansky's and Sushi a Go Go

Plaintiffs have not made any showing that employees of Jalapeño were victims of the same policy or plan as bussers at Lansky's or Sushi a Go Go. Jalapeño did not open until August 2010 – after the U.S. Department of Labor had advised Lansky's that it should stop paying employees by the shift. As a result, Jalapeño did not adopt a policy of compensating tipped employees by the shift. Young Aff. ¶ 12. Furthermore, neither the named Plaintiffs nor the other busser affiants were ever employed at Jalapeño and they provide no testimony about whether employees working there were notified of the FLSA tip credit. Although Maycon

Martinez Cruz claims to have worked briefly at Jalapeño, he was a cook, not a busser (Cruz Aff. ¶ 3). Cruz does not claim to have been paid as a tipped employee, and he offers no information as to how bussers, or any other tipped employee at Jalapeño was compensated. Indeed, Mr. Cruz acknowledges that there were different time keeping policies in effect at Jalapeño than at Sushi a Go Go.[8] In *Castro v. Spice Place, Inc.*, No. 07 Civ. 4657, 2009 U.S. Dist. LEXIS 7678 (S.D.N.Y. 2009), the Court denied leave to circulate a notice of an FLSA collective action to employees working in other commonly-owned restaurants based on a failure to substantiate joint employer allegations. The Court there wrote:

> Since the defendants' status as a joint employer has not yet been resolved, plaintiffs must present some evidence to show that defendants maintained a common scheme or policy before this Court can grant collective action certification under § 216(b). Plaintiffs have not met this burden.

*Id.* at *9. Likewise here, plaintiffs have not met their burden of showing that the named defendants maintained a common policy at each of the three restaurants.[9] Accordingly, notice should be limited to the locations where plaintiffs worked, *i.e.* Lansky's and Sushi a Go Go.

**B.   Notice Should Be Limited to Bussers at Lansky's and Sushi a Go Go**

As demonstrated above, the policy, if any, that plaintiffs have identified that allegedly violates the FLSA is defendants' taking a tip credit without notice. Because there is no

---

[8] The identical boilerplate assertions that "I have recently been in touch with employees who work at Sushi a Go Go, Lanksy's and Jalapeno ... [and] employees told me that they and their co-workers were not being paid their legal wages" are too vague and ambiguous to constitute evidence of a common policy. Further, such hearsay is of little or no value. *Barfield v. New York City Health and Hospitals Corp.*, 2005 U.S. Dist. LEXIS 28884, *3 (S.D.N.Y. Nov. 17, 2005) (evidence of a common policy requires more than anecdotal hearsay).

[9] Plaintiffs assert that all three restaurants did not pay spread of hours pay as required by New York State Law. The common policy required for notice under the FLSA is a policy in violation of the FLSA, not an alleged violation of state law. Thus, whether or not employees received spread of hours pay is irrelevant for purposes of this motion.

allegation, let alone evidence, that defendants took a tip credit for wages paid to cooks, dishwashers, kitchen workers, food preparers, hosts, hostesses and other categories of employees who are not traditionally tipped workers, those employees could not have been subject to the unlawful policy complained of and are not similarly situated to the plaintiffs. Accordingly, notice of the FLSA collective action should not be sent to them.

Similarly, there is no allegation or evidence that employees in job classifications where tips are generally given, such as waitstaff, bartenders or delivery personnel, were not notified of the tip credit. Indeed, three servers at Lansky's submit affidavits affirming that they were notified that they would be paid a reduced wage because they were receiving tips. Therefore, notice of the FLSA collective action should be limited to bussers.

C.  **Notice Should Identify the Common Policy That Violated the FLSA**

As discussed above, in order to be similarly situated to the named plaintiffs, the potential opt-in plaintiffs must have been subject to a common policy or plan that violated the FLSA. Plaintiffs allege that the common plan was to fail to notify employees of the tipped rate. Therefore, plaintiffs' description of the action should include the basis of their claim rather than the non-descriptive declaration that "you may be owed payment if you worked for the Defendants and were not paid at least the minimum wage for all hours worked..." Defendants suggest that the entire paragraph be stricken and the following be substituted: "You may be owed payment if you worked for Defendants and were not notified of the tip credit and earned less than minimum wage."

D.  **Any Court Approved Notice Should be Limited to a Three-Year Period**

Plaintiffs seek Court authorization to send their notice to employees who worked at any time from 2004 to the present. FLSA claims of employees who worked more than three years

before the opt-in date would be barred by the statute of limitations. Plaintiffs' provide no justification for communicating with persons who do not have a viable federal claim.

Sending notice to employees without timely FLSA claims is not appropriate. In *McBeth v. Gabrielli Truck Sales, Ltd.*, 2011 U.S. Dist. LEXIS 10398, *7 (E.D.N.Y. Feb 3, 2011), the court held that "while notice to all former employees, going back six years, has been authorized where plaintiffs seek relief under both the FLSA and the New York Labor Law ... the growing trend in this district appears to be limiting the notice period to three years." (collecting cases) (internal citations omitted). *See also, In Re Penthouse Exec. Club Compensation Litigation*, 2010 U.S. Dist. LEXIS 114743, *17, n4 (S.D.N.Y. Oct. 27, 2010) ("courts traditionally permit a three-year notice period.").

Solicitation of employees without viable causes of action will merely stir up unnecessary litigation. *See McBeth*, 2011 U.S. Dist LEXIS, at *9 (finding "no purpose in sending such employees a notice informing them that (1) there is a pending op[t]-in lawsuit, (2) they may not opt-in.") (internal citations omitted). There will be time aplenty to notify putative class members of their state law claims when and if such claims are certified to proceed as a class action. At this early point of the litigation, without the benefit of any discovery regarding the appropriateness of a class, notice should be limited to those who could possibly opt into the FLSA action.

E.     **Discussion of New York Labor Law and Spread of Hours Pay is Unwarranted**

If conditional certification is granted and notice is permitted, the certification will be under federal wage law and not under any New York law. "Reference to [state] law, even for informational purposes, can be misleading and confusing." *Gomez v. H & R Gunlund Ranches, Inc.*, No. CV F10-1163 LJO MJS, 2010 U.S. Dist. LEXIS 137736, at *26 (E.D. Cal. Dec. 16, 2010). Accordingly, language concerning plaintiffs' state law claims should be stricken from the

notice. *Id.; see also McBeth*, 2011 U.S. Dist. LEXIS 10398, at * 9 ("there is no reason to include reference to the pending state law claims in the Notice of Pendency"); *Montgomery v. Wal-Mart Stores, Inc.*, No. 3:03cv539 HTW-LRA, 2007 U.S. Dist. LEXIS 70574, at *14 (S.D. Miss. Sept. 24, 2007) (notice limited to FLSA claims, not including any reference to state law causes of action). No reference should be made to plaintiffs' New York Labor Law and spread of hours claims, as these claims are not relevant to plaintiffs' federal collective action claims.

F.    **Miscellaneous Corrections to Proposed Notice**

Plaintiffs' proposed notice states, in pertinent part: "If you wish to file a claim for unpaid minimum wages and unpaid overtime pay under the Fair Labor Standards Act you must mail the enclosed consent to joinder form ... to Lloyd Ambinder." That statement is misleading and should be deleted. Recipients of the notice can file their own clam under the FLSA without regard to this action. The other paragraphs of the section provide adequate advice on how to join this lawsuit.

Plaintiffs' proposed notice suggests that representation by Virginia & Ambinder is free because costs and fees will be paid out of any recovery against Defendants, whereas a plaintiff that chose another counsel would be responsible for paying that attorney. As far as we know, all attorneys have the same ability to seek attorneys fees if they are successful. Suggesting that Virginia & Ambinder has some special ability to represent employees at no cost is misleading.

Plaintiffs' proposed notice also fails to inform recipients that if they join the lawsuit they may have to participate in discovery, including depositions. Courts routinely include a statement in the notice notifying individuals that they may be required to participate in written and/or oral discovery proceedings, including depositions, and/or testify in a trial. See, e.g., *Sexton v. Franklin First Fin., Ltd.*, 2009 U.S. Dist. LEXIS 50526, at *42 (E.D.N.Y. June 16, 2009) (revising the notice to include "language stating that opt-in plaintiffs may be called upon to

testify, appear for depositions, and respond to discovery requests"); *Shajan v. Barolo, Ltd.*, 2010 U.S. Dist. LEXIS 54581, at *5 (S.D.N.Y. June 2, 2010) ("[P]utative class members should be told that they may be required to participate in the process known as pre-trial discovery, which may involve answering questions under oath, orally or in writing; they may also be required to testify at trial."). Accordingly, plaintiffs' notice should include language informing potential opt-in plaintiffs that they may be required to participate in pre-trial discovery and may be required to testify under oath.

## CONCLUSION

For the reasons discussed herein, plaintiffs' motion for conditional certification should be denied. If, however, the Court grants plaintiffs' motion, the notice of pendency should be revised in accordance with the points raised herein.

Date: May 2, 2011
New York, New York

_____S/_____
Andrew P. Marks
Elena Paraskevas-Thadani
LITTLER MENDELSON
A Professional Corporation
900 Third Avenue
New York, NY 10022.3298
212.583.9600

Attorneys for Defendants
